We'll begin with the first case. Good morning, Your Honors. Gwen Schoenfeld on behalf of appellant Angela Ocasio. Your Honors, this is a case where the system did not work. There was an unfortunate combination of a heinous crime. An innocent woman was killed. There was a prosecutor who crossed the line in order to secure a conviction. And then you had a defense attorney whose apathy and disdain for his client, Mr. Ocasio, was clearly reflected throughout the record. He did little to defend his client and did nothing to curb the prosecutor's abuses. The result, they got a conviction. My client was sentenced to life plus ten years. But he never had a fair trial. And there's certainly not a verdict for which there can be confidence. When I'd like to begin with this prosecutorial... Excuse me. Yes. The sentence of life was later changed to 42 years. Am I right? Is it still a sentence of life? As far as I know, if it's 42 years, I'd be happier. But I think it's still life plus ten. I'm sorry. That's okay. But there was an earlier habeas in which... But I may be wrong. It could have been a co-defendant. But thank you. So I'd like to begin with the prosecutorial misconduct, which was not the result of any mistake. There were too many instances. They were very specific. And the evidence that they addressed was way too important for somebody to have made a mistake. And why were these abuses so important to Angelo's case? There were two shootings here, both which resulted in a murder. The one at Cameron Street and the Troach murder. And the conviction for the discharge of a weapon is what led to the murder conviction. I'm sorry, which is what led to the life sentence in this case. I'm sorry. I was confused. You're right. No, that's okay. I'm glad you asked. And this was the weakest part of the government's case. Angelo was never charged with murder by the feds. He was not charged with murder by the state, even though both of them considered it. There were other co-defendants in this case who were charged with murder. They were convicted of murder. Some pleaded guilty to murder, but not Angelo. So this was a weak part of the government's case. Cameron Street, the government was missing a drug-related motive for the crime. They conceded the fact that this did not relate to an underlying drug transaction. And in order to get a conviction on the 924C for discharging a firearm, they needed an underlying drug-related motive, otherwise it was not a federal crime and could not be prosecuted as such under the Commerce Clause. And as to the Troach murder, Angelo was not connected. Again, the government conceded he was not directly involved. They conceded he was not a principal. So what did they have to do? They either had to get him as an aider and abetter or under the Pinkerton theory. Explain to me, was the Troach murder part of the sentence or was it enough to find the Cameron Street murder, as to which his shooting, I think there's little doubt about, was that plus the drug quantity enough for the sentence so that all the stuff about the Troach murder, which is the most dubious, is really not, ultimately is it harmless? Okay, you are correct that for sentencing they only relied on Cameron Street, assuming, which I'm not conceding that the evidence was strong. No, no, but I just want to be clear. Yes, but yes, you're right. Yes, you're right. They could just rely on Cameron Street for the discharge and they could just rely on the drugs for the other aspect. But it does not make it harmless because, as the government pointed out, I sort of need to prove both, that there was insufficient evidence or that both of those instances were not sufficient to support the verdict in order to get a reversal on this. And you argue with regard to Cameron Street, that the evidence was insufficient to establish a drug-related motive. You're not arguing it was insufficient in any other respect, but on the drug-relatedness of it, it was insufficient. On the appeal, yes, I'm only arguing that they were missing the drug-related motive. I did note in my brief that there are concerns as to whether he committed the crime at all, given the ineffective assistance, but I realize that's probably a 2255. But yes, on the appeal, that is correct. So why was the evidence as to Cameron Street, the drug-related motive, insufficient? I mean, you had the observation of Lance Plaza Paul in the expert testimony and the timing and sequence of events surrounding the shooting. What you don't have, you have Lance. I'll just use first names because there's a lot of overlap. Lance testified in this case. He's the only one who said that my client was the shooter. He's the only witness. He's the brother of Kendrick and Paul, the two leaders of the conspiracy. He testified he did not know the reason for the murder, for the shooting. He also testified that- But he did. He did testify that your client was the shooter. Why isn't that enough evidence for a jury to decide one way or the other? Because the shooting was not related to a drug transaction. But there is other evidence with respect to whether this was to maintain the position in a drug conspiracy. And that's fairly standard in these cases, and the evidence is always a little bit hither and yon, but the kind of evidence that the expert, which you're challenging, gives is one that comes up really a lot in this. And we've upheld, whether rightly or wrongly, we've upheld those any number of times as being enough. Two things on that. When you say that he was doing this to maintain his position, usually that arises in a gang case, to maintain their position in the gang. That's not the case here. They didn't allege gang, and there wasn't. But separate issue from that, there was no allegation that he did it to maintain his position. That's not what the government's theory was. What happened here was there was- Could I just interrupt with a question? Does it matter what the government's theory was? I mean, there was other evidence that suggested that it was drug-related. I know that wasn't what the government argued, but the fact that the person shot was a rival, the fact that the shooting was planned by the co-conspirators, that the co-conspirators were in the car, I won't recite it all because I don't want to take your time, but there was a lot of other evidence, even leaving aside the expert. So does the government's theory matter? It does matter. Because in this case, what you had, you also had evidence where somebody said, the government conceded there was no underlying drug transaction. They knew that because Ellison, who was the person who was the target, he told the investigator it was related to a racial slur. The whole fight started over a stupid racial slur, which unfortunately in today's society leads to violence. And that was the testimony. And Cassidy testified, he spoke to a lot of people when he investigated the shooting, and nobody, nobody said it was drug-related. Wasn't there also evidence, though, that Ellison and Acasio had arguments over the course of a couple of years leading up to this event, and they actually felt that Paul had been set up to be at this party so that he would be injured, all of which would be circumstantial evidence that the underlying drug rivalry was the motivating factor. But the underlying drug rivalry wasn't. There was testimony, it was over a racial slur. There was a fight. It was unfortunate. And then they just retaliated for whatever reason. And it was Paul that ordered that the defendants and the co-defendants go out on the shooting. It was not Acasio because he had these verbal disputes with Ellison for some time, and I don't think it was over the course of years. I think it was only a couple. But they were only verbal disputes, and there was no evidence whatsoever that they led to this. The evidence was it was a racial slur, it was a fight, it should have never happened, and then Paul, the brother, ordered the others to go and get him, basically. And when you say it's a racial slur, aren't you asking us to look at competing evidence and draw an inference contrary to what the government argues? I mean, isn't that what we're not supposed to do on appeal? But if there are equal inferences that can be drawn that support the defense and the prosecution, that is a reasonable doubt. And in this case, they did not have any evidence of the drug crime. That's why they had to have Martinek come testify. Lance testified that reputation was important among drug dealers and that if they're perceived as weak, you have to go and retaliate. But Lance, who was the family insider, he was the only witness to the shooting who said, testifying witness to the shooting, who said my client was a shooter. He was the one who led them to the house. He specifically never said that that reputation was a reason for that shooting. Never. And there was no evidence that resulted from a drug transaction. And everything that it did lead to was that this did not have anything to do with the drug transaction. It's still a horrible crime. I'm not denying that. But it did not relate to a drug transaction. This is not a federal crime. And the state considered indicting my client for murder. They didn't. There was obviously a problem with the evidence. And the only evidence against my client in that shooting is two witnesses. You have Barnes, who claims he was at a meeting and left with a gun. And then you have Lance. Lance, who did not have to testify against his brothers and his mother, who were the leaders in this conspiracy. He only had to testify against my client and the other non-family member, Colo Batisto. So you have a witness that's a little bit compromised. And, by the way, he got, after my client was sentenced, he got time served for all his involvement and all these activities. All that, you know, I'm very sympathetic to what you're saying. But it is part of this system that we have all the time. I mean, all the time you get a witness against a person who is before us, who was very much involved, turns state evidence, gets a very low thing, and the jury chooses to believe that. I agree. And all of these facts that I'm going over now, that's why the prosecutorial misconduct and the ineffective assistance were so important. Well, the ineffective assistance may well be important. But, as you said, that probably is best handled in a 2055 habeas, isn't it? I mean, there are an awful lot of questions which would have to be asked about that rather than having us directly. And that also goes to how many of the things here are issues of plain error and, you know, all of that, which is certainly part of this case. Yes. I think that the ineffective assistance, if you were going to consider it globally, yes, because there's a lot more that's not on the record. However, there were very specific instances here that were on the record, and it does show that it affected my client. And when you consider that in conjunction with the prosecutorial misconduct, which was very directed at the weak points in their case, it was targeted. Given our preference generally with regard to ineffective assistance to look at it on a full record, why don't you address the prosecutorial misconduct specifically? Okay. So the three instances that I wanted to address specifically. So the first one, the government knew that there was an issue on Cameron Street. Like, we did have a witness issue, but they knew that there was an issue about whether or not it was drug related, and they were concerned. So they had Cassidy testify. He testified at a suppression hearing. He was the investigator who interviewed my client upon his arrest. He also testified at trial. During the suppression hearing, he was asked, Did you ask him, meaning my client, about Cameron Street? When four years later he testified in a different way, that was based on this investigative report, so that the notion that he was actually lying, which is what you say in the brief, and that the government knew of that is really stretching, isn't it? I mean, here somebody testified to something years before, and then ultimately he says he had denied it. But at one point he says something different from what he said at another time when he had an investigative report. You know, perjury is mighty serious, but I think if you were the defendant's lawyer in a perjury thing, you'd say that's mighty stretched, wouldn't you? Okay, a couple of things. If that were the only instance, I would say, yeah, it was probably a mistake. You do make mistakes during trial. It wasn't, though. The other thing with that is, even if you say, okay, he had no obligation or he didn't go back and check the testimony, which, by the way, was only 45 pages. It's not like it was 100-page hearing testimony. But he said in that report, Ocasio denied the killing. And here's what's important. Ocasio, upon his arrest, he was asked about two murders. He said, I didn't kill anyone. When you're asked, did you murder somebody, and you said, I didn't kill anyone, that's saying I'm not involved. Okay, if you start cutting hairs and saying, well, maybe involvement doesn't mean killing, maybe it only means this. He's not a lawyer. He just got arrested. And to say that he should craft his answer with some type of legal ease, that's not going to happen. So it was in his report. And even if you go back and look at that report and say, okay, fine, so he didn't read the testimony. That was sharp. At best, that was sharp. And you might say it was a mistake, except that you have the other two, which were blatant. So you have the Becker testimony. And the reason the Becker testimony is important, in the Troach murder, which I know you say it might not be necessary for sentencing, but we still have to prove it in order to get a result in this case. And the government was also worried about Cameron Street. So that's why they presented evidence of both. And they were both sort of interrelated. So in the Becker, they couldn't get him as a principal because they knew he was not directly involved. So they either had to get him on aiding and abetting, which required advanced knowledge, or they had to get him on the Pinkerton, which required reasonable foreseeability. And they didn't have that. The only link to get those two elements was Becker's testimony about the meeting that supposedly happened in her house, where she came down and overheard a comment by some unknown speaker, not knowing who still was in the room, about an alibi. And that was the only link they had. And the government knew it was a weak link because she said specifically, I don't know if Angela was in the room. So on summation ‑‑ Correct me if I'm misunderstanding this, but we're referring to one statement in the summation, right, that the government misstated that Becker's testimony was that he was in the room when I came back, when in fact she didn't recall if he was in the room when she came back. She had testified that he was there during the day of the meeting. So even if there was a misstatement of the record, it was a single small portion of the summation, and the jury is repeatedly instructed it's your recollection of the evidence that controls. And it's plain error review, I believe. So, I mean, that's a pretty big hill for you. But when you look at it in conjunction with the three, it's no longer little instances. That's why I emphasized in my brief that it's the combination of the three when you look at it, because now it starts to create a picture. And, yes, it was only one comment, but that comment was so important. The government knew without knowledge they didn't have a case on the Trosh murder. So what they did, they knew that Becker's testimony was wishy‑washy. Why aren't we moving? I mean, here is the Trosh murder, which is relevant maybe but only to the side, and there is one comment, and there is no objection at the time. So, you know, that is pulling it an awfully long way to say this is the kind of fundamental error, fundamental misbehavior of the government that causes us to toss a whole case. You also have the comment on the silence. And your point about no objection? That wasn't a Fifth Amendment situation. It was a due process. It was a Fifth Amendment due process situation where he commented on my client's silence. And the thing is there was a concerted effort here. You have Cameron Street, you have Trosh, and now you have the government saying, hey, he was confronted with these, and he never denied his guilt. That's like the next best thing to a confession. So you have both of those things going on, and then you have the government going on about Becker to provide that knowledge element, and all of a sudden you're looking at the elements start to fall together on the weak points in their case. And I don't think it's sufficient to just say I understand it's in the cases where, oh, it's one comment, oh, there's no objection. There was no objection because the defense lawyer was asleep at the wheel. He didn't object to . . . All that is for a discussion of the ineffectiveness of counsel, which you do raise, but as you said is something that is very difficult for us to take, to look at without a whole lot of things that aren't in the record right now. Yes, but it does help to explain what happened here. It's not like the defense lawyer didn't think it was important, and that's why he didn't object. These were really, really important issues, and the prosecutor focused on those issues. Thank you very much. Thank you. We've taken you well over time, but there are a lot of backs in this case. Thank you. May it please the Court. Monica Richards on behalf of the United States of America. With regard to the sufficiency of the evidence, I believe that the Court picked up on quite a bit with regard to the adequacy in that regard. There was definitely the testimony, which we have to take on appeal, this Court's review,  that Lance Plaza Pierce's testimony that was direct eyewitness testimony of the situation with regard to the shooting. With regard to the motive for the shooting itself, the evidence there was circumstantial. It was linked together. It was because of these events and because reputation is important, looking at the entire history of this group's efforts to maintain their drug dealing, to maintain their dominance over their competitors, that the inference that was requested was the direct link between the reason for the shooting and it being drug-related. I understand your adversary is arguing that this is in that category, small category of cases where there is circumstantial evidence and the evidence is essentially in equipose. In those circumstances, we have on occasion deemed the evidence insufficient for a reasonable jury. Right, but I'd fully disagree that this was in equipose. We had a comment that was made to an investigator. The flashpoint here was the use of the racial slur as having started this. Frankly, that was something that was a comment that was made by one of the people involved, people who were involved in these shootouts, and there was no witness testimony to that. I'm sorry, he did not testify to that in front of this jury. So that really wasn't in front of the jury. That would be a ginormous leap for this court to call that in equipose, where the evidence as such wasn't sworn testimony presented to this jury. What somebody said to an investigator throughout this case, there was a lot of misstatements. There were a lot of stories that came up, a lot of reasons for events occurring that were or were not true, including in Mr. Ocasio's own statement to the investigator, he said he was never involved in violence. But we have lots of evidence, sworn testimony by people who were involved with him in that violence, that he was involved in violence. So there's lots of instances here of people telling things to investigators that weren't fully accurate. So to rely on that when that wasn't something that was presented to the jury as sworn testimony, I think would fall flat in terms of that equipose argument. With regard to the claims of prosecutorial misconduct, I can't say enough that that's fully unfair with regard to this case. That the claims with regard to the question that was asked, I think the court picked up on it, and I appreciate that with regard to the testimony. Were you counsel below? No, sir, no, Your Honor. With regard to the testimony, excuse me, but the prosecutor who did try the case was involved with me in writing the brief. He's on a detail in Argentina right now, so it was a little tricky, but I was in touch with him during the course of this. With regard to the statement at the hearing, with regard to the suppression hearing, that really wasn't even fair game. That wasn't really even fair subject at the suppression hearing. The subject, excuse me, the subject of the statement, the details of the statement, and what I would refer the court to with regard to the testimony at the trial, the investigator at the trial, I'm sorry, the investigator at the suppression hearing, when he realized that he was on this path with regard to the denials and what happened and what didn't, and he asked for the opportunity to look at his report. And once he looked at his report, he said that's right. He said I didn't kill anyone. And that was out there a number of times. It's not like this jury didn't hear the denials. The jury heard it both during the prosecutor's questioning on direct during the trial and then also, again, on cross-examination. And to call defense counsel ineffective when, in fact, defense counsel, when he was crossing Cassidy, said so he didn't admit the shootings, he didn't admit that he did this, he said I didn't kill anyone. All of that came out during cross. And so this jury had the ample opportunity to observe that testimony, to hear it twice, both on direct and on cross, that's in A1177 of the record, and the jury made the determination. And so here the claim of prosecutorial misconduct, while the questions and the answers, everything might have been inartful, it might not have been perfect, really this jury heard what it needed to hear and heard the statements I didn't kill anyone, but they found to the contrary. And, excuse me, in this case they did not find to the contrary. In this case they found element of discharge was proven with regard to the charge in the indictment. So otherwise the claims regarding prosecutorial misconduct, unless there's any questions, I'll let those go. What about the asserted Fifth Amendment claim, commenting on silence? I said I didn't believe that was a Fifth Amendment situation, and opposing counsel made much of that. Well, again, that's what the jury heard. The jury did hear what exactly was said, I didn't kill anyone. So that's where I have a problem trying to understand, maybe I'm just missing the nuance, but with regard to what the problem is, when the jury heard the statement twice, again, I didn't kill anyone. So commenting on a silence, if the attorney said that during the closing and it was post-Miranda, but in the whole picture of things, as Your Honor noted, when the jury was instructed that the closing arguments are not testimony, that in the whole scheme of things here there was no violation, there was no due process issue. And I'm sorry, Your Honor, I had a question. I had a question about if we were to conclude that the evidence of the drug-related motive for the Cameron Street shooting was sufficient, is there any reason to address the Trosh murder? As I understand at trial, there were two theories as to a discharge, one related to the Trosh murder and one the Cameron Street. Yeah, and actually interviewing for this case, I sort of realized there was a third one. There was a drive-by shooting right after the stabbing occurred. Mr. Ocasio, there was testimony that there was the fight. Mr. Ocasio went back to the party and, as Your Honor noted, confronted. The question is do we need to get into the Trosh murder and whatever evidence there was of it at all, given if we were to find that the evidence of the Cameron murder is enough and enough of a link to drugs so that that upholds the sentence? That's the question. Right. I'm sorry. I understood. I thought about this other thing first. You're right. That's the question, and no, we do not need to consider that if we find that the evidence was sufficient with regard to the Cameron Street shooting. Thank you. Along similar lines, do we need to deal with the issue of drug quantity if we find that the murder enhancement in the calculation of the sentencing guidelines was appropriate? No. Right. As my counsel noted, both arguments would have to be persuasive, and if one is, then no, we would let the other go. Unless there's any further questions, then. Thank you. Thank you. Just briefly, on your question about whether or not you still have to address the drug quantity, I would ask that you do, the reason being if there is a 2255 and anything is changed, it may come up at a subsequent trial or it may come up at the 2255. So I think we still need a ruling regarding that. Sorry. But I think that that would be necessary because it may just come back anyway. The other issue I wanted to address was the prosecutors. Could I just ask quickly then, what about the testimony about the drug quantity? Because we don't have the PSR, or at least I don't. I couldn't find it anywhere. And so I can only infer from what I have read that it's based on the testimony about the 62 kilograms at the beginning of a month. The PSR is actually in a sealed appendix. It's in a separate envelope. It's not included in the binders. The court does have it if you need another. I'm happy to provide it. Okay, I'm glad to know that. Can you tell me in any event? Yes, I can. Okay, so the drug quantity relates to both the heroin and the crack quantities. The heroin quantity in the PSR was based on something that Kendrick said about his trips. Ocasio had nothing to do with those trips involving the heroin. He had nothing to do with dealing the heroin, selling it, packaging, nothing, nothing. Wasn't he the enforcer for the whole conspiracy? And it wasn't like he was the enforcer for the cocaine part of the conspiracy? It's not like he was the enforcer for the whole conspiracy. I know that's the government's theory. But this was just a violent group of people. So the two leaders who were the brothers, they did a ton of the violence. Then you have Damian Colobatisto. He did violence. They were all involved in violence. There wasn't one person who was supposedly an enforcer, and although I am challenging. But haven't we regularly held that where there is this much involvement in a conspiracy, the person who is involved can be charged with all the drugs that the conspiracy was involved in? So to say that heroin was not part of it seems to be a bit bizarre if the person was an enforcer for a conspiracy that dealt heroin. That is true in terms of the conviction for a conspiracy. But when now you're in the sentencing context, and you're looking to figure out how much of the drugs they are responsible for, you're responsible for the amount that was within your jointly undertaken activity. There's a note in 1B3 that says that's not the same as the conspiracy, and they give the example of the person are. The main issue of the drugs is whether the court, which treated instead of a small amount very frequently, a larger amount less frequently, or vice versa, whether given what we have said about difficulties of having an exact amount, whether that is enough to make the amount be inadequate in sentencing. Those were two issues. So the amount about what the testimony was, whether it was at the beginning of the month versus the rest of the month, relates to the crack. That's a separate issue. And in that issue, there was no testimony at all about what was purchased, what was sold in the middle or the end of the month. The only thing he said was at the beginning of the month, I'm selling a lot. I'm selling like 62 grams every day, day and a half. So they extrapolated. Therefore, every day and a half, he's selling at 31 grams, which would be half. That's not the testimony. There was no testimony he even sold later on. The reason was that he gave at the trial for why he did so well at the beginning of the month was welfare checks. That was the testimony. So I would submit that they extrapolated way beyond what the testimony was for the crack. For the heroin, Ocasio's jointly undertaken activity, he had nothing to do with the heroin. So he should not have been hit for the entire amount of that heroin conspiracy. There was no testimony connecting him with heroin dealings at all. And that was actually a huge, huge bulk of his drug sentence. And that was wrong. There was no, and of course, the lawyer at the time didn't say anything about jointly undertaken activity. The lawyer objected and said, well, there was no marijuana because he didn't realize there was a conversion table in the guidelines. So that was his big objection about the drug quantities. So I hope that answers your question. The only other thing I wanted to get at really quickly, the prosecutor said it wasn't fair game to raise the testimony at the suppression hearing. Because when he went back and got his report, he said, oh, you're right. He testified that he didn't kill anyone. But the citation that the government gave, which is to page 8241 in the appendix, when he asked to review his report, that had nothing to do with whether or not he denied killing anyone. That had to do with whether or not he said, I don't want to speak anymore. It had nothing to do with that statement whatsoever. It was entirely fair game. You had an investigator who testified one way and said something in his report and testified differently at trial. What page of the record is that that you're referring to? 8241. That was the site that the prosecutor gave for that back and forth. Thank you for- My last very quick comment is, I realize that 2255 might not be addressed, but I would hope at least in the hearing, in the opinion, that there would be some reference to allowing counsel to represent him for that. Because this is a huge case and a very difficult one for him to do by himself on a 2255. Thank you. Thank you. Thank you both. Well argued. Yes.